May it please the Court, James Segal on behalf of Apple, I'd like to reserve three minutes of my time for rebuttal. We'll try to help you, but keep your eye on the clock, please. Thank you, Your Honor. CPC is attempting to use 28 U.S.C. 1782 to compel Apple to export some of its most sensitive information concerning the biometric security measures on millions of users' devices to Germany. We'll be subject to- Counsel, with respect, I'm trying to cut to the chase here. There is so much unsaid, unspoken in the request that the district court did not deal with at this point that we're really in a quandary, at least I'm in a quandary about whether this matter is finalized enough that we even have jurisdiction. Why is it this case like Banca Pueo from the Fifth Circuit? Well, Your Honor, I think it turns on how this court understands the district court's order and what it leaves open for Apple to continue to argue on remand. So it's certainly the case, I don't think we would argue that it's been definitively determined exactly what Apple will have to produce and what might be exported to Germany. But we understand the district court's decision to at least foreclose certain of the key arguments that Apple would be making against the export. But what, for example, I know you've spoken of the source code, and I get that. That's an important factor. But there are like 15 categories, as I recall, and it's all in the broadest possible terms. I don't pretend to be a tech expert, but I know something about it. And I have no idea how looking at the language of the request that you can specifically state that you are required to produce source code. What am I missing? Well, Your Honor, we had the experience from the prior U.S. litigation, or I should say that it's still ongoing. It was Texas, it was transferred here. Essentially, CPC is called the corresponding patent, it's the 705 patent, which it claims corresponds to the patent it would assert in a potential German lawsuit, which it hasn't brought yet. And there, the parties engage in substantial discovery. And so it's that experience which leads Apple to know what will be responsible for these discovery requests. Right, so I guess you're saying there's maybe a likelihood that you would have to produce the source code, but you haven't been ordered to do that yet. Well, the District Court 1782 order authorizes CPC to serve a subpoena that would then compel Apple to produce that information. Right, but I thought you have filed objections, you served objections to the subpoena. We preserved our objections, Your Honor, yes, but we've essentially just stated that we believe that the District Court should have granted this 1782 order in the first place. It seems premature to me because you served your objections and there's been no motions to compel. Is there anything that would prevent you from appealing again if you kind of run it through? Because I'm struggling with the same thing that Judge Smith is struggling with. It's really difficult to figure out how to assess the intel factors without knowing the scope of the discovery that you are eventually going to be ordered to produce. You're right that it seems the District Court feels that some discovery is necessary and it's likely that he would order the production of some discovery, but the scope of that, whether you would have a problem with that, that's really unclear on this current record. Well, Your Honor, I think to answer your initial question, it is possible there could be a subsequent appeal. I don't necessarily think that deprives this particular order that we're appealing here of finality, as this Court recognized in its prior decision in this case. Often there can be follow-on proceedings following the entry of final judgment. Those can result in appeals, so it might well be that this Court has jurisdiction now to entertain Apple's appeal from the 1782 order, and then if there is subsequent motion to quash proceedings, which would compel proceedings, further litigation that leads to another order, Apple might then appeal that, just as it might appeal the denial of, say, an attorney's fees order. Right, but I mean attorney's fees really are regarded as somewhat ancillary to the judgment, whereas here the judgment is essentially the documents, and as it stands right now, you made some legal, your client made some legal objections to the 1782 application. Those were rejected, but that doesn't mean, it doesn't tell us what you're going to have to be required to provide, and it's not as though there's a meeting of the minds between the parties on that point either. That's fair, Your Honor. I do, I would acknowledge that there does remain significant litigation that might fall in the district court. I think what this Court's prior precedent has recognized, that once the district court issues an order under 1782, that's sort of, that's ended the main event in the litigation, because again, this is litigation about whether discovery should be ordered, and so here what the district court said, it overruled the magistrate judge's findings that these requests were unduly evasive. As you well know, this is the second round with this, and then the first thing, we had a magistrate judge saying, I deny the order. So then it was clear, there's nothing further for the district court to do, and we said, we went from where we were there. Here, from my perspective, like the Banca Puella, where you have basically so many unknowns, so much that the district court's going to have to clarify, or the parties will have to agree upon, that I guess, in hard terminology, I'm not sure this is final under 1291. How do we have jurisdiction? As you well know, our first obligation is to determine whether we have jurisdiction. In Banca Puella, the Fifth Circuit concluded in a somewhat similar case, they didn't have  Why isn't this case somewhat analogous at this point to the Banca Puella? I acknowledge it is somewhat analogous, Your Honor. I think the key distinction is that in the Banca Puella case, the Fifth Circuit case, the magistrate judge there had essentially invited the parties to file an additional motion to quash. It denied a motion to quash, but it said, I haven't really addressed a lot of the issues here. Please file another one that might actually change the scope of discovery. But here, the only difference is there's a stay motion, right, or there's a stay in place. There is a stay in place, Your Honor, yes, but the district court, I do think it really depends on how this court reads the district court's order and what it thinks it leaves open to Apple to argue on a remand. What does Apple intend to do? In other words, if the stay were lifted, what are the next steps in the district court? Well, Apple could conceivably file a motion to quash or it could resist a motion to compel. There's also a provision in the protective order that requires CPC to get permission from the magistrate judge before exporting any information to Germany. So those are all sort of potential litigation touch points where we could make arguments. But presumably, the arguments that Apple could make are limited by the district court's order, which is already determined at the 1782 factors that the intel factors would compel this production here. Can I get back to what my colleague mentioned earlier about the intel factors? As you know, the district court did go through the four factors and spent a fair amount of time on the fourth factor, which is the most difficult one in this case. But I don't know how we, as a court of appeal, based upon this record, can appropriately analyze the fourth intel factor, given the indeterminacy of the request, the 15 requests. To me, it's an open book. It's not at all clear what's being requested. So how can we tell whether it's burdensome or not, for example? Well, I think it's the prior litigation between Apple and CPC in the U.S. is what sort of clarifies the issues here and makes clear that there really is extremely confidential information that's at stake. So CPC has public information available to it. It's gotten substantial amounts of non-confidential information from that prior litigation and actually relied on that public information almost entirely in moving for summary judgment for infringement on the 705 patent, which is the one corresponding to the one that CPC claims it will raise in the German litigation, which, again, it has not yet even filed. So the only reason it's bringing the 1782 action or it's continuing to pursue the 1782 action is to get the confidential information that Apple previously produced. And it's admitted that. It said in its briefing that it's trying to get the information that it's precluded from the protective order in the parallel U.S. litigation from using to bring suit in Germany. But it's never explained why it needs that confidential information to bring suit in Germany. So that's why we think this just doesn't get out of the starting gate, because CPC is requesting extremely sensitive information. It's trying to export that to Germany, where courts have recognized the Eighth Circuit in the Andover case record. Let me ask you what may be a touchy question. Given the nature of the plaintiffs in this case, has Apple been asked by them, for a certain amount of money, we'll settle this, you don't have to worry about giving up your source code. Is this kind of a pressure situation from your perspective? I mean, there's certainly, I don't want to get too much into the sort of discussion. I think there's been ongoing litigation in Australia, in the U.S., this sort of hypothetical lawsuit in Germany that CPC has been pressing against Apple, essentially worldwide, and I would expect that there have been offers of settlement involved, but I don't want to sort of get too much into the weeds on that. So you don't know specifically who you can share with us? No, Your Honor, but I think your Honor's hypothesis that there are likely settlement discussions is accurate. Is the hypothetical nature of the German proceeding some kind of bar to 1782 relief? It's not a categorical bar, Your Honor. No, under the statutory factors that set out in 1782, as long as the proceeding is in reasonable contemplation, 1782 can be available, but it's still a relevant factor in determining whether 1782 discovery should actually be ordered. The Supreme Court in Intel actually recognized that sort of the considerations that play into, that the court had rejected certain categorical bars, but it said those proposed categorical bars, including sort of whether or not a suit had been filed in the foreign litigation, could be relevant in assessing the more discretionary Intel factors. And here we think it bears directly on the intrusiveness of requests. What role, if any, does the PTAB's invalidation of the, your opponent's U.S. patents have, if any, on this case? I think it's a significant objective indicator that CPC's suit, prospective suit in Germany would lack merit. So the PTAB found that CPC's patents, including the 705 one that it claims is going to be the basis or the corresponding one for its suit in Germany, is obvious and thus invalid. Does it affect the scope of the discovery for this case to be remanded? We would ask for the remand so the district court could determine in the first instance whether the fact that we now have this clear indication that CPC's German suit likely would not even get off the ground is yet another reason to decline to give CPC access to this extremely sensitive information. So CPC hasn't shown why it would need this information in the first place. But then even if it were to show some sort of need, if it's trying to get this extremely sensitive information simply to bring a meritless lawsuit in Germany, there's really no reason that the risk of its disclosure should be incurred. What's the status of that PTAB proceeding? Is there further review of that ongoing? It's being appealed in the Federal Circuit, Your Honor, and the briefing is complete. I think it was complete in August, and we're just waiting for argument. Doesn't what you just said, though, kind of go to what we all collectively are sort of asking about, which is there seems to be so much ambiguity in what's being sought, particularly now that the PTAB has invalidated the patents, at least on the first step, that maybe we don't have jurisdiction. It's so indefinite. It's so unfinal, if you will. What's your comment about that? I don't think the PTAB decision bears on the jurisdictional question. I do think it's a reason for remand. But I take Your Honor's point that sort of the actual scope of discovery might be somewhat unsettled. Do you want to save any of your time? Yes, please, Your Honor. Very well. Thank you. Okay. So, Mr. Summerfield, please. Good morning. Good morning, Your Honor. May it please the Court, George Summerfield, on behalf of the Appalachian CPC, I want to address two main arguments that Mr. Siegel raised. Number one, whether this is truly a final decision that this Court is currently reviewing. And number two, his repeated reference to the highly confidential nature that apparently Apple is now contending is mandated by the discovery requests posited below. Starting with the first issue, I listened very carefully to what Mr. Siegel said, and what I believe he said was that the things remaining to be done does not deprive this Court of jurisdiction. Well, that certainly isn't the language from Firestone Tire by the Supreme Court. There it said something is final if there is nothing remaining for the Court below to do except enforce the judgment. Well, we know that's not the case. Here it's very clear that Apple doesn't believe that the scope of the discovery requests that CPC posited below are definite enough for them to simply produce documents. In response to each request, Apple objected and said that it was willing to meet and confer on the proper scope of each request. And very clearly, Apple has the ability, if the parties can't come to an agreement, to file for a motion to quash or some sort of motion for protective order. But did the meet and confer take place? No, it didn't because the case was stayed in the interim, Your Honor. So we haven't even gotten that far. Is that the difference between the Baca-Puello case and this one is the stay order in this case? That's right, Your Honor. Nothing basically was able to happen because the District Court stayed the matter before anything else could be done. Absent the stay, the parties would have proceeded to do the meet and confer to see if they could come up with an agreement and basically determine whether there was a set of discovery requests that would be palatable to everybody. So in this case, if we, and I gather you are proposing this, if we conclude based upon the reasoning of our sister circuit that there's so much that's indefinite, there's lots for the District Court to do if it's not final, if it goes back, in effect, if I understood your colleague, he's suggesting a remand is necessary for a different reason, but in effect it all goes back to the District Judge and we're kind of back where we started from. But in our case, we don't really know what we're moving with. It's kind of like an amoeba. It keeps changing. And from my perspective, I'm having a difficult time determining that this is a final order that we can have jurisdiction over. Well, Judge, CPC is the party that raised that issue, so yes, we are in agreement with Your Honor. Basically, there is still tasks remaining to be done by the District Court. That according to the Supreme Court precludes the decision below from being final. So we shouldn't even be here. And trust me, that doesn't do CPC any favors because basically this case has been delayed for a while. We would ordinarily like to be in a position to ask this Court to rule that yes, the discovery requests are proper, yes, Apple should be required to produce the response of information, but as officers of the Court, we couldn't say that in good faith. Is there any world in which Apple, in your view, is not required to produce the code? We don't know, Your Honor. As a matter of fact, that was the second point I wanted to raise. If we look at what Apple said about our discovery requests, it's very carefully worded. Apple says that our requests target source code, that they implicate source code, but never do they say that the only way that they can answer a discovery request asking for documents sufficient to show how the accused devices work is by producing source code. But your position is, at least standing here today, is you don't know whether that's necessary or not. Apple's never told us, Your Honor. The only thing we hear from Mr. Siegel is, well, we have the experience of the first litigation in Texas. That's true. Apple chose to produce the source code. They chose to produce that information specifically. We didn't ask for it. We asked for similar requests sufficient to show, and what we got from them was source code, presumably because that is what they had available at the time. But I don't know, as we stand here today, whether Apple has anything else that would be sufficient to show how their iPhones operate. So if we send this back, but by declining jurisdiction because we don't have it, what happens next from your perspective? Presumably exactly what would have happened if the case never got stated. The parties would sit down in a room, figure out whether there is, again, a universe of discovery requests that are acceptable to Apple, acceptable to CPC, and if not, we can address that issue with the court below. Has that happened before, or this would be the first time? This would be the first time, Your Honor. Basically, there is a long and tortured history with this case coming up here earlier, as the court noted, to address the question of whether the magistrate's denial of the petition in the first instance was dispositive or not. How long has this case been going on? Three and a half years, Your Honor. Three and a half. Okay. And in the three and a half years, we have not gotten a single document from Apple, including the very public information that Mr. Siegel references existing. They won't even — You need it for the German proceeding. Is there a reason you couldn't proceed without this there? I'm sorry. With just public information, Your Honor? Correct. Or put — I don't know what you need to file in Germany to lay a claim there, but is it your position that you can't move forward there until you get what you think you need here? Well, that's our opinion, Your Honor, because Apple can disavow whatever public information is out there. It didn't come from them. And it can simply say, that's not us. We didn't say that. It's not reliable, et cetera, et cetera. But your client hasn't tried in Germany yet. You haven't tried to put something down to see if it will stick without the information you're seeking here. That's correct, Your Honor. Basically, in Germany, there is no discovery. Everything is tried on the papers. So we don't have the benefit of filing in Germany and then hoping to get the discovery later on that we need from Apple. We have to have everything in line before a complaint is ever filed. And we believe that in this circumstance, it has to be information from Apple that Apple cannot run away from as being authored by someone else. So if the proceeding in Germany would proceed solely by looking at papers, if you didn't have the adequate papers, presumably you could lose with prejudice, or what we would call it, with prejudice. It would be. Because you didn't have the information. Yes, Your Honor. The German courts aren't going to give us two bites at the apple. If we don't have what we need at the beginning and lose, we can't go back a second time and say, how about this? Got it. Are there still ongoing challenges with regard to the invalidation of the patents before the PTAB? I'm not sure what their appeal litigation process is, but I understand there's been a series of decisions. Are there still ongoing proceedings there in which you have to await the outcome of that before filing suit in Germany? So the one patent in question that affects any prospective litigation in Germany has a German correspondent. There is one patent that the PTAB, the Patent Trial and Appeal Board, has ruled to be invalid. CPC has appealed that decision to the Federal Circuit. So right now, the PTAB is divested of jurisdiction with the Federal Circuit sitting in appeal over that decision. And as Mr. Siegel correctly stated, briefing is done. We're just waiting for oral argument at this point. So there, whether the PTAB's decision stands or not is an open question. But more importantly, what would be at issue in Germany is a German patent, not a U.S. patent. And the German courts aren't bound by what the PTAB or anyone else in the United States has to say about a U.S. patent. Is there a German patent on matters that you're claiming? It is the foreign counterpart, Your Honor, so yes. But again, whatever they call it, the foreign counterpart, there is such a beast, if you will. Yes. Yes. Patents are territorial. If one wants patent protection in a particular country, one has to file for a patent in that country. So CPC had to obtain a patent in Germany to get patent protection there. And you have that? We do. Yes, Your Honor. And that would be the basis of the contemplated litigation. Apple seems to argue you're trying to go around a protective order in U.S. litigation. Do you want to respond to that? There's nothing in the protective order that prohibits filing for a Section 1782 petition, Your Honor. And if we were really looking to get around the protective order or avoid it or circumvent it or whatever term they're using, we would have just sent the information we already have to Germany. If we truly didn't care about what the protective order said, that would be our behavior. We're not doing that. We've spent three and a half years trying to get the information we want through a U.S. statute that allows us to do this. And if Mr. Siegel could stand up and rebuttal and point to something in the protective order that says, no matter what this protective order says, you can't file for a Section 1782 petition for discovery, fine. He can't. He could say the information produced in this litigation can only be used in this litigation, and that's true. But we're not trying to use the information produced in that litigation in Germany. We're trying to get them to produce information under the Section 1782 petition, whatever that might end up being. Can I ask you a question? I mean, there's a huge question as to whether we even get there. But on the intel factors, what burden did the district court have to make some assessment of the quality of the protections in Germany? Because one thing that the court said was that the protections are essentially unknown. We have an Eighth Circuit case that cast doubt on how strong those protections are. Your Honor, a couple points there. Number one, first of all, the court basically said, look, it doesn't really matter what goes on in Germany because you're bound by the proceedings here. There was a protective order negotiated by both parties below governing this very proceeding. Apple took part in that. And the parties concluded a protective order that governs what the parties do. So the court made the point that, look, whether there's protection sufficient to guard Apple's concerns or not, you guys are subject to the protective order here, and I can sanction you if there's any misbehavior at all. No, I understand that. I guess what I'm asking, though, is did the court have some further obligation to evaluate how good the German protections are? Your point is the district court can bind the parties here. It can sanction them. And you're right, he said that. But he also said, I don't know what will happen in Germany. And what I'm asking is, is that sufficient for the district court in these cases? Or do they need to do something more in terms of examining what kind of protections the foreign legal system provides? Well, Your Honor, at least in the district court's earlier case in Palomar, that's the very reasoning it followed. So the case below cited to Palomar saying, look, there are sufficient protections here, and in this case, it's even more robust. The protective order we negotiated had a couple different provisions. Number one, there has to be an express protection for source code in the event it's produced at all. And secondly, we have to seek the approval of the magistrate judge before we use any information in Germany. Those two safeguards weren't present in Palomar, and the northern district still said that the safeguards are sufficient. The point, though, is, Judge, it's an abuse of discretion standard. And so the question is, did the court abuse its discretion in saying, my protective order is good enough? And the answer very clearly is no. What Apple offers up is hypotheticals. Maybe it's sufficient, maybe it's not. Maybe we're going to be a party to the German action, maybe we're not. Maybe CPC is trying to circumvent the district court's protective order, maybe it's not. There's no evidence here that any of the intel factors weigh against issuing the 1782 discovery that the district court issued. At this point, all the evidence points to the fact that the intel factors weigh in favor of that production, or at least are neutral. My understanding is that in the German proceeding, you wouldn't actually be suing Apple, Inc. It's a subsidiary or an affiliate. How does that correspond to this litigation, where you're asking Apple itself for things embodied in the 15 requests? So, basically, the accused product will be the same. It's the cell phones and the security mechanisms on the cell phones. So the documents are what they are, irrespective of wherever they come from. But the parties that would be the subject of the contemplated suit would be the parties that are actually doing the selling of those products in Europe. Okay. So they're the sellers, but basically you think the code or whatever, they get that from Apple, right? That's correct. And so there are plenty of instances in patent litigation where if you go to the court, their answer always is, we don't know. Ask the party that manufactures the products. We do not have information about those. You committed in the district court to not suing Apple directly in Germany, right? That's correct. We would be suing two related parties, but not Apple, Inc. And, again, Apple's response is, who knows what's going to happen? Well, we do, because we're the ones that are going to be bringing the suit. And we've represented to the court on repeated occasions that the district court noted that we would not be suing Apple, Inc. in Germany. And, again, we're subject to Rule 11 below. So if we're lying, there's a remedy for that. And we are not – there's no motivation for us to bring Apple, Inc. into the litigation there. There just isn't. And Apple hasn't pointed any. One last point I wanted to make, Your Honors, and that's with regard to whether this is just a pressure tactic. Mr. Siegel doesn't have the benefit of being involved in the district court litigation. I am. And I can tell you that the only real overtures on settlement in this case have come from Apple, not from CPC. So there has never been any communication from CPC to Apple that says, hey, guys, guess what? If you just write us a check, you don't have to worry about this source code nonsense anymore. That just hasn't happened. This is a legitimate request for discovery to support a legitimate litigation in Germany. And, again, all of this presupposes that Apple at some point has to produce source code. The protective order they negotiated below said that there will have to be an additional provision to the protective order if source code is produced. If truly only source code is the only response of information, that provision would be nonsensical. But Apple agreed to it only to argue that these protections are somehow now ineffective. Your Honors, it's been three and a half years. We don't have a single document. I would like this case remanded to the district court so we can sort all this out and hopefully finally get discovery from Apple at the end of the day. Thank you. Thank you, counsel. Mr. Siegel, you have a little time left. Thank you, Your Honor. I'd just like to make three points. So first, counsel represented that they need everything in line before they bring suit in Germany. I'm not aware, and CPC hasn't cited any case in which a party brought a 1782 action for prospective German litigation that had not yet been filed. They have cited, and what I'm aware of, are numerous cases where the German litigation had already been filed. Parties came to the U.S. and got the 1782 discovery that they then used in Germany. Our point is simply that. Is it correct that Apple is in accord with the terms of the protective order? We negotiated the protective order, and we made it as expansive and protective as possible. But we are not in accord with the proposition that it's sufficiently protective of our information if it works. What's in there you agree with? Excuse me, Your Honor. What is in there you do agree with? We agree that there should be substantial protections for source code once it's the United States. We believe it needs to be applied to CPC. We believe that the magistrate judge needs to affirmably consent. So what's inadequate about it? What's inadequate about it are two main things, Your Honor. First, it can't control what happens once this information is in any German proceeding. So that's exactly what the Andover case, the Eighth Circuit decision, recognized was the problem. So German court obviously is not bound by a U.S. protective order. There are third parties that can get access to information that can intervene in German proceedings. I don't see how you could ever have a 1782 application that's successful. I mean, you can never bind a foreign court. You can never bind a foreign court, Your Honor, but there are circumstances in which the risks would not be as high as they are here. Again, we're talking about an entirely hypothetical litigation, never been filed, no showing of why this particular information would be needed. So counsel referenced the fact that it said the public information wasn't from Apple. It relied in its summary judgment papers on Apple-produced white paper. So I'm not exactly sure where that came from. And on top of that, so that there's no showing of need. And then in addition, we're talking about a requesting entity that has no significant assets in the United States. It's a foreign patent-holding company. So there's not even clear that it could be meaningfully enforced against CPC if it were to violate the protective order. So there's all these additional risks here that aren't present in the run-of-the-mill 1782 proceeding. And that's why we think that district court abuse of discretion. And, Judge Bryce, you asked earlier sort of does the district court have to consider what might happen in Germany? And our position is clearly yes, it does, because the ultimate question is whether this discovery will actually get out into the public. And our position is if the district court doesn't grapple with that and didn't hear, that's an abuse of discretion. Very well. Thank you, both counsel, for your argument. We appreciate it. The case just argued is submitted, and the court stands adjourned for the day. All rise.
judges: SMITH, NGUYEN, BRESS